JAMES CALLANAN *et al.*, Appellants, v. SARAH MERILL, Appellee.
SAME v. JOHN P. LARSON, Appellee.

Contract for Sale of Lands: DESCRIPTION: CONSTRUCTION. The plaintiffs' grantor having purchased three-fourths of the interest of Kossuth county in its swamp lands and indemnity scrip, and C. being the owner of the remaining one-fourth, except such portion

as he had become divested of by conveyance to P., said grantor of plaintiffs entered into a written contract with C. for the purchase of the lands owned by him, which, being incapable of description by numbers, or by metes and bounds, was described as, "all of said C.'s —— interest," and again, as " a conveyance of all remaining interests of whatever character which the said C. now has or hereafter may acquire in any of said lands or claims for indemnity." At the date of said contract the conveyance from C. to P. had not been recorded, but the evidence tended to show that one of the agents of the grantee named in said contract, who was negotiating for said purchase, had actual knowledge of the deed to P. *Held*, that said contract was not ambiguous, and that it conveyed only the interest C. had in said lands at the date thereof, or might thereafter acquire, and did not include the lands previously conveyed by him to P.

*Appeal from Kossuth District Court.*—HON. GEORGE H. CARR, Judge.

MONDAY, OCTOBER 13, 1890.

THESE actions were brought to quiet title in the plaintiffs to certain lands described. The pleadings and proofs being the same in each case, except as to the descriptions of the land in question, and the parties defendant, they were submitted together in the district court, and decrees entered for the defendants, from which plaintiffs appeal. The cases are again submitted together here.

*H. E. Long*, for appellants.

*Clark & Call*, for appellee Merrill.

*W. B. Quarton*, for appellee Larson.

GIVEN, J.—I. It appears from the evidence before us that in February, 1862, Asa C. Call contracted in writing to procure for Kossuth county patents for the swamp lands and the indemnity scrip to which the county was entitled, for which service he was to have one-fourth of the land and scrip procured. In pursuance of this contract, the county conveyed the land in question to Call, July 12, 1862; and on September 12,

1862, Call conveyed the same to John S. Prescott, under whom defendants claim. The deed to Prescott was not recorded until March 1, 1868. On June 19, 1862, Kossuth county sold its right to swamp lands, and to indemnity scrip, to the American Emigrant Company, and, in pursuance of that contract, executed to John Hooker and others, in trust for said company, a deed dated October 16, 1866, conveying the lands in controversy, with many other tracts. The trustees afterwards conveyed to the company; and on December 17, 1885, the company conveyed to the plaintiffs. On March 24, 1866, Call executed a conveyance to the American Emigrant Company, which was duly acknowledged and recorded. The construction of this conveyance, and the effect of the failure to record the deed to Prescott before the conveyance was executed, are the controlling questions in the case. This conveyance is as follows:

"Agreement made and concluded this twenty-fourth day of March, 1866, by and between the American Emigrant Company, by its general agent, F. C. D. McKay, of the one part, and Asa C. Call, of the county of Kossuth, of the other part, as follows, to-wit: The American Emigrant Company are the owners of three-fourths of the swamp and overflowed lands, and claim on the general government for the swamp and overflowed lands, and cash and scrip indemnity for the same, of the county of Kossuth, in the state of Iowa. The said Call has a contract with the said county for the remaining fourth of the swamp and overflowed lands, and cash and scrip indemnity for the same, of the county, and owes the county, as a part of the consideration therefor, about fourteen hundred dollars. The company have purchased *all of said Call's interest*, and agree to pay him therefor the following prices, on the terms and conditions hereinafter specified. The company agree to pay him at the rate of thirty cents per acre for all lands and indemnity which the said company shall finally realize out of the one-fourth interest claimed by Call, one thousand dollars of which is herewith paid to said Call in a draft on

the treasurer of the company, payable sixty days after sight, the receipt of which is hereby acknowledged; fourteen hundred dollars of which purchase money is to be by the company reserved out of and from the money to be paid said Call, to enable the company, in whole or in part, to purchase the said land of Kossuth county, in case the said contract between Call and the county should be violated; and the balance, if any there be, after taking out the said twenty-four hundred dollars of the purchase money, is to become due and payable to the said Call as soon as it can be definitely ascertained what amount of lands are acquired by the company out of *Call's interest.* In case there should be a delay in the first settlement with the government or any parties, it is agreed that the excess of the purchase money over and above the said twenty-four hundred dollars shall be paid the said Call at the end of each and every year from this date, from time to time, as the titles to the lands are acquired by the company. If at any time the company deem it necessary, the said Call will, upon request, make and execute to said company any further or different conveyance *of his interest* in said lands, with or without lists, and will, if requested, release to the county or the company *all claims to any interest* in the same under this contract. *This contract is to operate as a conveyance of all remaining interest of whatever character which the said Call now has or hereafter may acquire in any of said lands or claims for indemnity* (which interest and claim has been duly examined, and is understood by the company), by virtue of his contract with the county before alluded to, but nothing in the foregoing instrument contained shall make said Call personally liable in case of a failure of title to any of said lands. In testimony whereof we have hereunto affixed our hands this twenty-fourth day of March, A. D. 1866.

"[Signed]  ASA C. CALL.

"[Duly acknowledged.]"

II. Appellants contend that by this instrument Asa C. Call conveyed to the American Emigrant Company

his one-fourth interest in all the lands he had, or was to get, under his contract with Kossuth county, while appellees contend that it is only a conveyance of the interest which he then had, or might thereafter acquire, and that, having theretofore conveyed the lands in controversy to Prescott, he did not then have or convey any interest therein to the emigrant company. Question is made whether the conveyance from Call to Prescott was prior to his conveyance to the emigrant company. The deed is dated September 12, 1862, and there is nothing to contradict the inference that arises that it was executed at that date. We are satisfied the conveyance to Prescott was prior to the conveyance to the emigrant company. This instrument from Call to the emigrant company was the subject of construction, with respect to certain questions raised by demurrer to the petition, in the case of *Emigrant Co. v. Clark*, 62 Iowa, 183, wherein the plaintiff asked to have its title quieted to certain swamp lands, as against a conveyance made by Call after he executed this instrument to the emigrant company. The questions considered were whether the instrument was a conveyance or a mere contract for a conveyance, and, if a conveyance, whether it included the land conveyed by Call to Clark. It will be observed that in that case the question was as to a subsequent conveyance by Call, while in this it is as to a prior one. There is no such ambiguity in this instrument as will admit of the consideration of parol evidence in explanation of it. Read in the light of the circumstances under which the parties contracted, their intent and meaning is ascertainable from the writing.

Appellants rely largely upon certain expressions with respect to this instrument contained in the last paragraph of the opinion in *Emigrant Co. v. Clark*, *supra*. It must be remembered that those expressions are with reference to the question whether the conveyance from Call to the company included the land thereafter conveyed by him to Clark. After holding that the instrument is a conveyance, the court, in considering whether it included the land subsequently conveyed to

Clark, says: "It is evident, however, that the instru-
ment in question refers to all the swamp and overflowed
lands of Kossuth county, except the three-fourths
already claimed by the plaintiff. The petition alleges
that in pursuance of said contract the county conveyed
said land to Call. It appears, from the allegations of
the petition, therefore, that the lands in controversy
inured to Call by virtue of his contract with the
county; and the instrument declares that it is to operate
as a conveyance of all remaining interests which Call
now has or may hereafter acquire, by virtue of his
contract with the county. The instrument does, in our
opinion, under the allegations of the petition, embrace
the lands in controversy, although before that time con-
veyed to Call." In determining whether the convey-
ance was sufficiently definite in its description of the
property, it is further said: "The contract embraces
all the land inuring to Call under his contract with the
county." None of the expressions in the instrument
relied upon as limiting it to the interest that Call then
had or might thereafter acquire are referred to in this
opinion, nor was it necessary; for that question was not
before the court as to a previous conveyance. *Emi-
grant Co. v. Call*, 22 Fed. Rep. 765, is also relied upon.
In that case, the question was whether the indexing of
the record of the conveyance from Call to the American
Emigrant Company was such as to give notice to Sweet-
ing, a subsequent purchaser from Call. The court fol-
lowed the case against Clark in holding the instrument
to be a conveyance, and held that the indexing was
sufficient to put purchasers upon inquiry; but the ques-
tion now under consideration was not before that court.

III. In construing this conveyance, we are to con-
sider the circumstances under which it was executed
and received. The American Emigrant Company, hav-
ing purchased the three-fourths interest of the county
in its swamp lands and indemnity scrip, desired to pur-
chase the other fourth. Mr. Call had become owner of
that fourth under his contract with the county, and
then held the same, except as he had been divested by

the conveyance to Prescott. The conveyance under consideration shows that it was impracticable, if not impossible, at the time of its execution to describe the lands being conveyed in the usual manner. Being impracticable to identify the subject-matter of the contract by numbers or metes or bounds in the usual way, it is identified by reference to it as the swamp and over-flowed lands, and indemnity scrip, of Kossuth county, of which the emigrant company owns three-fourths, and for the remaining fourth of which Call has a contract with the county. The second paragraph of the instrument points out the subject of the contract, but does not declare what part thereof, or interest therein, has been purchased, or is being conveyed. The next paragraph makes clear what was purchased: "The company have purchased all of said Call's interest, and agree to pay him therefor." The last paragraph is equally definite as to what was conveyed: "This contract is to operate as a conveyance of all remaining interests of whatever character which the said Call now has or hereafter may acquire in any of said lands or claims for indemnity." This language is in direct conflict with the claim that Call was conveying all that he ever had acquired under the contract with the county. It is not so expressed, and the "conveyance of all remaining interests" precludes the idea that he was conveying more than he then had. We think this instrument is plain and unambiguous, and shows upon its face that Call was to, and did, convey only the interest he then had, or might thereafter acquire, under his contract with the county, and not all the interest that he ever had, or might thereafter acquire, under that contract.

IV. It is contended that the emigrant company purchased from Call without notice of the deed to Prescott. That the company had no notice by record is evident, for that deed was not then recorded. Mr. Savery testifies that none of the agents of the company had actual notice or knowledge of the existence of that deed. While this may be true as to Savery, we are not

satisfied that it is true as to the other agent of the company, Mr. McKay, who was equally active in the negotiations with Call. The language of the conveyance, and all the circumstances, tend to show that Call did not conceal the fact of that conveyance. There is no reason apparent why he should. He was to be paid according to the amount of land the company got, and to have withheld these few acres from so large a transaction would certainly not have prevented the deal. The language of the conveyance quoted above goes far to satisfy us that the emigrant company purchased with knowledge of the deed to Prescott.

As the foregoing conclusions fully dispose of the case, it is unnecessary that we notice the discussion further. The decree of the district court is AFFIRMED.